1  **WO**
2
3
4
5
6  **IN THE UNITED STATES DISTRICT COURT**
7  **FOR THE DISTRICT OF ARIZONA**
8

Bridgett Harris,

No. CV-17-02456-PHX-GMS

Plaintiff,

**ORDER**

v.

Commissioner of the Social Security Administration,

Defendant.

Pending before the Court is claimant Bridgett Harris's appeal of the Social Security Administration's (SSA) decision to deny disability insurance benefits. (Doc. 12). For the following reasons, the Court affirms the decision.

## BACKGROUND

Ms. Harris filed a claim for disability benefits on November 22, 2013. (Tr. 13). She alleged that she suffers from fibromyalgia and obesity and has been disabled since May 1, 2012. (Tr. 13, 15). The claim was denied, and Ms. Harris eventually appeared before Administrative Law Judge Earl Cates on February 1, 2016. (Tr. 13). In evaluating whether Ms. Harris was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (Tr. 14–15).

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the

At step one, the ALJ found that Ms. Harris had not engaged in substantial gainful activity since the alleged onset date of May 1, 2012. (Tr. 15). At step two, the ALJ determined that Ms. Harris suffers from fibromyalgia and obesity. (Tr. 15–17). At step three, the ALJ decided that Ms. Harris's impairments did not meet or equal the criteria of a listed impairment in the regulations. (Tr. 17–18). At step four, the ALJ determined Ms. Harris's residual functional capacity and found that she could perform medium work with various exceptions, such as frequently climbing stairs but never climbing ladders. (Tr. 18–25). As part of this analysis, the ALJ considered the opinion testimony of treating physician Dr. David Schumer and various consultative examining physicians and reviewing physicians. (Tr. 18–25). The ALJ then determined that Ms. Harris is capable of either performing her past relevant work as a child monitor or working in various other available vocations in the national economy. (Tr. 25–27). Accordingly, the ALJ determined that Ms. Harris does not qualify for disability benefits. (Tr. 27).

The Social Security Administration Appeals Council denied Ms. Harris's request for review. (Tr. 1). She filed this complaint on July 24, 2017 to challenge the denial of benefits. (Doc. 1).

## DISCUSSION

**I.  Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir.

---

regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). A reviewing court may draw specific and legitimate inferences from an ALJ's decision, but it cannot speculate on the ALJ's reasoning or make "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

## II. Analysis

### A. Family Nurse Practitioner Tamara Rector

Nurse practitioners were categorized as "other sources" under the regulations. *See* 20 C.F.R. § 404.1513(d)(1) (explicitly listing nurse practitioners as an "other source" under the regulations).[2] "[O]nly 'acceptable medical sources' can be considered treating sources, . . . whose medical opinions may be entitled to controlling weight." Social Security Ruling 06-03P, 2006 WL 2329939 at *2 (citing 20 CFR 404.1527(d) and 416.927(d)). An ALJ "may use evidence from 'other sources' . . . to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Id.* Nurse practitioners are therefore not entitled to the same deference as acceptable treating physicians under the regulations. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir.

---

[2] The Social Security Administration has recently updated its regulations to include nurse practitioners as acceptable medical sources. However, at the time of Ms. Harris's decision, the regulations still qualified nurse practitioners as other sources, and thus her case will be governed by the prior regulation.

- 3 -

2012). An ALJ may discount "other source" opinions by giving germane reasons for doing so. *Id.* (internal quotation and citation omitted).

Tamara Rector is a Family Nurse Practitioner at the Multi-Specialists practice. (Tr. 464). The ALJ considered Ms. Harris's medical record from the Multi-Specialists practice in his decision, which included treatment notes from Ms. Rector. (Tr. 22–23). Ms. Rector completed a form opinion concerning Ms. Harris's fibromyalgia at the request of Ms. Harris's disability attorney. (Tr. 464–468). Ms. Rector opined that Ms. Harris's condition allowed her to sit for eight hours, stand for two hours, and walk for one hour in a typical work day. (Tr. 468). Ms. Rector also opined that Ms. Harris would miss one day of work per month, "[d]epending on type of job[,]" and that she could only occasionally lift or carry five pounds and perform other physical acts. (Tr. 467–68).

Ms. Harris argued that the ALJ failed to properly dismiss the opinion testimony of Ms. Rector. (Doc. 12). The ALJ summarized Ms. Rector's opinion, but dismissed it because nurse practitioners are not acceptable medical sources. The ALJ did not otherwise analyze Ms. Rector's "other source" opinion or give any germane reasons to discredit it. In its response brief, the Government agreed that the ALJ erred by failing to provide a germane reason for dismissing Ms. Rector's opinion. (Doc. 14 at 2).

### B. Harmless Error

Once it has been determined that an ALJ erred during the review of a claimant's file, the next step is to determine whether the error was prejudicial. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (applying the harmless error standard). An error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted). "[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin,* 454 F.3d 1050, 1055–56 (9th Cir. 2006). Ninth Circuit precedents "do not quantify the

degree of certainty needed to conclude that an ALJ's error was harmless." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). However, "where the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Id.*

The parties dispute whether the ALJ properly discredited the opinion testimony of Dr. Schumer and whether substantial evidence supported the ALJ's decision to deny Ms. Harris's claim. Although Ms. Harris did not challenge the ALJ's decision to discredit the testimony of Dr. Schumer in her opening brief, it is relevant to the harmless error analysis.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001); *see Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996) ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."). If a treating physician's opinion is "not contradicted by another doctor, it may be rejected only for clear and convincing reasons." *Lester*, 81 F.3d at 830. An "ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)).

If the treating physician's opinion is contradicted by another doctor, the ALJ still cannot reject the treating physician's opinion unless he provides "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 831 (internal quotations omitted). "Sheer disbelief is no substitute for substantial evidence," and thus the ALJ must specify what evidence she is relying on to reject the treating physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the

rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. The ALJ may cite to diagnostic test results, contrary reports from examining physicians, and "testimony from the claimant that conflicted with her treating physician's opinion" to provide specific and legitimate reasons for rejecting the opinion of a treating physician. *Id.* at 831.

"A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). An ALJ may discredit a treating physician by relying on "contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). An ALJ may consider whether the claimant's activities are inconsistent with the limitations outlined in a treating physician's opinion. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

ALJ Cates referenced a three paragraph letter from Dr. Schumer dated January 16, 2014 where Dr. Schumer opined that Ms. Harris has severe fibromyalgia and is unable "to stand more than one hour a day" or "lift and carry more than 5 pounds." (Tr. 330). Dr. Schumer also stated that Ms. Harris is taking various medications and that fibromyalgia "is lifelong, but not progressive." (Tr. 330). The ALJ assigned little weight to this opinion. (Tr. 24).

The ALJ noted the following in his review of the objective medical evidence and Ms. Harris's treatment. In May 2012, Dr. Schumer noted that Ms. Harris "[i]s back on medication now" and "is stable without complaint." (Tr. 358). Later that year, he did a follow up on fibromyalgia and noted that Ms. Harris "is stable on medications." (Tr. 363). In October 2012 and March 2013, Ms. Harris complained that the medications were not helping as much, and Dr. Schumer modified her prescriptions. (Tr. 368, 376). From April to July 2013, Ms. Harris met with Dr. Schumer four times to refill prescriptions. (Tr. 381–384). In July 2013, Dr. Schumer noted that Ms. Harris had not taken some of her medications. (Tr. 385). He "stressed the importance of staying on her

medications" and noted that "things remain stable with her fibromyalgia" and "patient is otherwise well."  (Tr. 385).  After various appointments to refill prescriptions, Dr. Schumer noted in November 2013 that Ms. Harris "is stable on her medication" and "[s]he is otherwise doing fairly well."  (Tr. 392).  At their last visit in February 2014 before Ms. Harris moved away, Dr. Schumer noted that Ms. Harris's fibromyalgia "is stable on medication" and "[s]he is otherwise doing well."  (Tr. 395).  These reports are nearly identical to those in 2011, prior to Ms. Harris's alleged onset date of disability, where Dr. Schumer noted that Ms. Harris "is stable on medication" and is otherwise doing well."  (Tr. 340); (Tr. 344) ("fibromyalgia . . . remained stable on her medication"); (Tr. 348) ("follow-up on fibromyalgia she currently stable on medication doing fairly well").  Dr. Schumer never reported that he conducted an actual physical examination for fibromyalgia, nor did he ever state in his treatment notes that Ms. Harris struggled to lift objects or sit, stand, or walk for periods of time.

After Ms. Harris moved away from Dr. Schumer, she received treatment from the Multi-Specialists practice.  At her first visit in June 2014, Dr. Fala noted that Ms. Harris had very severe fibromyalgia "per patient" and that she "wants to get Disability due to Fibromyalgia."  (Tr. 410).  He conducted a physical examination and reported that she was in "no apparent distress," but that "[t]ouching any part of the body . . . causes tenderness."  (Tr. 412).  Dr. Fala prescribed pain medications.  (Tr. 412).  At her next visit, Dr. Tran noted that she was in no apparent distress during the physical examination, and he prescribed continuance of current medications.  (Tr. 415–16).  The record shows that Ms. Harris had regular appointments at Multi-Specialists through January 2016 with Nurse Practitioner Tamara Rector and other doctors.  (Tr. 473–571).  Ms. Harris was often diagnosed with fibromyalgia and referred to pain management via medication.  (Tr. 473, 514, 539, 567).  Nothing in these records indicates that Ms. Harris's impairments limited her physical mobility or that she was incapable of lifting more than five pounds.

The ALJ also noted the report of consultative examiner Dr. Brian Biggs from May 2014.  (Tr. 20).  Dr. Biggs performed a physical examination, noting that her upper and

lower extremity strength and grip were all normal. (Tr. 399). Dr. Biggs noted that "fibromyalgia testing was negative." (Tr. 398). In his review of her medical records, he stated that "[n]o testing for fibromyalgia was performed" and that Ms. Harris "is stable on her medication" and is "otherwise doing fairly well." (Tr. 399). Dr. Biggs diagnosed Ms. Harris with "complaints of generalized joint pain." (Tr. 401).

The ALJ additionally referenced the report of consultative examiner Dr. Monte Jones from October 2014. (Tr. 22). Dr. Jones also performed a physical examination and noted that Ms. Harris's lower, upper, and grip strength were all 5/5. (Tr. 423). Dr. Jones performed a formal test for fibromyalgia and recorded that she felt pain in 18/18 tender points under moderate pressure. (Tr. 424). However, he also conducted informal or distracted testing where "several points were tested while performing other tests" and Ms. Harris "did not complain of pain or displayed any facial signs of pain or discomfort." (Tr. 424).

The ALJ found that two medical consultants, Dr. Martha Goodrich and Dr. Michael Keer, adequately reviewed Ms. Harris's file. (Tr. 23). Dr. Goodrich noted that the medical record from the treating physicians did not document a formal exam for fibromyalgia and concluded that Ms. Harris's impairment was non-severe. (Tr. 73). Dr. Keer opined that Ms. Harris had some exertional limitations, but that these impairments would still allow her to stand, walk, and or sit for more than six hours in an eight hour work day. (Tr. 99).

In review of the ALJ's findings, the Court finds that the ALJ provided specific and legitimate reasons to discredit Dr. Schumer's short opinion that Ms. Harris has extensive limitations from severe fibromyalgia. Again, the Court must defer to the ALJ's conclusion "when the evidence before the ALJ is subject to more than one rational interpretation." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). For Ms. Harris, the record supported the ALJ's conclusion that Ms. Harris suffered from fibromyalgia, but that she could treat it with medication such that it was not disabling. Further, nothing in the record suggested that Ms. Harris's impairments limited

her from sitting or standing for more than one hour in a day or lifting more than five pounds, as Dr. Schumer opined.

Consequently, the ALJ's failure to properly reject Ms. Rector's other source opinion is harmless. Again, Ms. Rector opined that Ms. Harris's condition allowed her to sit for eight hours, stand for two hours, and walk for one hour in a typical work day. (Tr. 468). Ms. Rector also opined that Ms. Harris could occasionally lift or carry five pounds and perform other physical acts. (Tr. 467–68). The ALJ considered Ms. Harris's medical record at Ms. Rector's clinic when he rejected Dr. Schumer's similar claim of severely limited mobility. (Tr. 22–23). The ALJ properly reviewed the record, including Ms. Rector's clinic's treatment notes, when he determined that Ms. Harris had some limitations, but could still perform some of her past relevant work or other vocations in the national economy. No objective evidence in the treatment notes or medical record indicated that Ms. Harris had the severe mobility restrictions as Dr. Schumer or Ms. Rector opined in their brief assessments, and two examining physicians contradicted those unsupported claims when they tested Ms. Harris and found that her strength was normal. (Tr. 398–99, 423–24). Even if the ALJ assigned some weight to Ms. Rector's opinion—as he did with Dr. Schumer's opinion—the evidence still supports his conclusion that Ms. Harris can perform her previous work as a child monitor or in other nationally available vocations with light or sedentary exertion levels, such as furniture rental or call operator. (Tr. 26–27). Notwithstanding the ALJ's failure to provide a germane reason for discrediting Ms. Rector's opinion, substantial evidence still supports the ALJ's decision, and the error "does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

## CONCLUSION

As described above, the ALJ erred in its review of Nurse Practitioner Tamara Rector's opinion. However, substantial evidence supported the ALJ's decision, and the error is harmless. The Court affirms the decision.

///

**IT IS HEREBY ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of the Court is directed to enter judgment accordingly.

Dated this 28th day of June, 2018.

_____
Honorable G. Murray Snow
United States District Judge